UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

                    Plaintiff,                          Case No. 2:23-cv-12288

v.                                                      HON. SUSAN K. DeCLERCQ

ANTHONY J. RUSSO, JR., PA, *et al*.

                    Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 28 & 42)**

Plaintiff Mark W. Dobronski, like many Americans, is tired of telemarketing calls—especially unsolicited robocalls. Indeed, such calls are so pervasively annoying that Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227, et seq., that, along with its implementing regulations, 47 CFR 64.1200(a), restricts the use of sophisticated telemarketing equipment and practices that can target millions of consumers *en masse*. In an attempt to fight back against companies that continue such practices in violation of the TCPA, Dobronski has become a frequent self-represented litigant in this district.

In this case, Dobronski has sued four law firms: Anthony J. Russo, Jr. P.A., Matthew A. Dolman P.A., TorHoerman Law LLC, Saddle Rock Legal Group LLC; two other entities: Spring Investments, Inc., Intake On Demand, LLC; two "non-registered fictitious business name[s]": Injury Claims Service, Consumer

Enrollments Center; and five individuals.[1] Dobronski alleges that all Defendants violated various provisions of the TCPA.[2] Two motions to dismiss were filed by ten of the defendants.[3]

For the reasons that follow, the motions will be granted.

## I. BACKGROUND

### A. Alleged Scheme

In his First Amended Complaint ("complaint"), Dobronski alleges that Defendants are all engaged in "soliciting members of the public to be represented by

---

[1] The individuals are Anthony John Russo Jr., Thomas Lowe Young, and Tyler Joseph Schneider, Jeffrey Steven Fishman, and Rochelle Marissa Adler.

[2] Dobronski also claimed violations of the Florida Telemarketing Sales Act, Fla. Stat. § 501.059, but the Court previously declined to exercise supplemental jurisdiction over these claims. ECF No. 30.

[3] Defendants Intake On Demand, Injury Claims Service, and Consumer Enrollments Center have not appeared in the case or filed any motions. A default was entered by the Clerk against Defendant Intake On Demand on February 8, 2024. ECF No. 35. And in the motion filed by Spring Investments, Inc., Jeffrey Steven Fishman, and Rochelle Marissa Adler, ECF No. 42, it asserts (in a footnote) that Defendant Injury Claims Service has not been served with process, but that the motion similarly applies to it, presumably since Defendants Adler and Fishman are alleged to be the owners and partners of Injury Claim Service. *See* ECF No. 25, PageID.119.

Because the complaint, motions, and responses do not factually distinguish the non-moving Defendants from the moving Defendant, this Court sua sponte considers the claims against all of the Defendants in this opinion. *Silverton v. Dept. of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.") (collecting cases).

Defendants in filing claims and lawsuits" related to potential exposure to contaminated drinking water at Camp Lejeune in North Carolina from 1953 to 1987. ECF No. 25 at PageID.137. He alleges that they are doing so by "engaging in mass telemarking and robocalling campaigns to broad swathes of the United States . . . ." *Id*. Specifically, Dobronski alleges that Defendants Anthony J. Russo, Jr. P.A., and Matthew A. Dolman P.A., are the lead law firms representing "consumers injured by toxic water at Camp Lejeune," and that they are "partnering with other law firms and lawyers," including Defendants TorHoerman Law LLC and Saddle Rock Legal Group LLC. *Id*. Defendants Anthony Russo, Tyler Schneider, and Thomas Young are alleged to be leading the "Camp Lejeune water contamination lawsuit consumer marketing" on behalf of their respective law firms. *Id*. at PageID.137–38.

Dobronski alleges that to solicit potential plaintiffs, Defendants "utilize third-party telemarketers to initiate telephone calls *en masse* using automated telephone dialing systems." *Id*. at PageID.139, 142. When a call is answered, the telemarketers will ask questions to determine if they might qualify as a plaintiff in the Camp Lejeune litigation. *Id*. If so, they will "transfer the call to a 'verifier' to make a further determination of their qualifications, and then if verified, will transfer the call to "an agent who will further discuss legal representation of the consumer and seek to have the consumer agree to legal representation" in the Camp Lejeune litigation. *Id*. at PageID.139–40. A representation agreement is then sent to the consumer, which is

the first time that the attorney or law firm name is disclosed. *Id*. Any inquiry into identification of the caller results in the telemarketer hanging up or failing to provide the information. *Id*. at PageID.140.

If the consumer does not qualify or makes "a do-not-call demand," the telemarketer will terminate the call. *Id*. at PageID.139–40.

Dobronski further alleges that "Defendants are engaged in a concert of action . . . designed to conceal the identity" of the entities and people involved. *Id*. at PageID.138. In order to "conceal identities, the third-party telemarketers will falsify or 'spoof' their caller identification numbers information" so the recipient will not know who called. *Id*. at PageID.141. Dobronski therefore engages in conduct that he terms "a canary trap," which means that in response to the telemarketer's call, he provides a false, unique name, so that if the name resurfaces, he will be able to tie it to a certain telephone call. *Id*. at PageID.142.

Although Dobronski admits that the identities of the third-party telemarketers allegedly utilized by Defendants currently are unknown, *id*. at PageID.142–43, he attributes many of the calls involved in this case to Defendant Consumer Enrollment Center, based on the caller ID display—"CONSUMER ENROLL"—during the calls. *See id.* at PageID.146–54. Dobronski also alleges involvement with these calls to Defendants Intake On Demand, Injury Claims Center, and Spring Investments,

Inc., based on links between them and individual Defendants Fishman and Adler. *Id*. at PageID.154–56.

### B. Subject Telephone Calls

Dobronski claims that prior to August 16, 2023, he "received dozens of telephone solicitation calls to his "residential telephone line (321) ***-0911 where the caller [was] attempting to ascertain whether [he] or 'any loved ones' . . . worked or served at Camp Lejeune between 1953 and 1987." ECF No. 25 at PageID.143. Despite demanding that they no longer call him, the telephone solicitations continued. *Id*.

Although Dobronski's telephone number has a Florida area code, he asserts in his motion papers that he "subscribes to a telephone which uses Voice Over Internet Protocol" (VoIP), so when his number is called, it appears at both his Florida and Michigan residences. ECF No. 32 at PageID.227–29. In his complaint, Dobronski specifically states that at the time he received all the relevant calls, he "was located at his residence in Michigan." ECF No. 25 at PageID.131.

The claims at issue in this case involve 18 specific calls received on that line between August 16 and August 29, 2023, that allegedly violate the TCPA ("Subject Calls"). *Id*. at PageID.143–54.

Dobronski received Call #1 on August 16, 2023, at approximately 10:48 a.m. *Id*. at PageID.143–44. Upon saying hello, he "heard a 'bonk' sound," which

Dobronski states "is indicative of an automatic telephone dialing system being used," and two to three seconds later, "a male individual began speaking and identified himself as 'Michael. . . with Injury Claims Services. . . on a recorded line." *Id*. at PageID.144. The caller asked Dobronski if "you or anyone else in your family ever served at Camp Lejeune," to which he replied, "yes." *Id*. Dobronski then gave false answers to a number of identification questions, including giving his name as Lester Clarke. *Id*. The caller noted that Dobronski's telephone number "shows on the do not call list" and asked if he had an alternate telephone number. *Id*. Dobronski responded that he did not. *Id*.

The call was then transferred to a different telemarketer who identified herself as "Tony . . . with the Camp Lejeune Compensation Center" and asked the same questions as the prior telemarketer. *Id*. at PageID.144–45. Tony thereafter sent Dobronski an email addressed to Lester Clarke at the false email address Dobronski had provided, which attached "a contingency fee retainer agreement on Russo Firm letterhead" and identified "Russo Firm, RP Law LLC, and Dolman" as the law firms providing representation. *Id*. at PageID.145. The agreement was pre-filled with the false Lester Clarke information Dobronski had provided. *Id*. Although Tony attempted to get Dobronski to electronically sign the retainer agreement, she hung up when Dobronski asked her what company she worked for and where she was located. *Id*.

Shortly thereafter, at 11:40 a.m., Tony called back (Call #2) asking for Lester; she told him that the "the contract was already sent out" to him and to tell any future callers that he had already signed up. *Id*. at PageID.146. Tony called again asking for Lester later that day at 2:43 p.m. (Call #5).

On August 17, 2023, Dobronski received another call asking for Lester (Call #7). *Id*. at PageID.148. The caller identification displayed CONSUMER ENROLL. *Id*. Upon answering, the caller identified himself as being from "the Enrollment Center" and want to confirm that Dobronski had "done the intake yesterday with Tony with the law firm Russo Dolman." *Id*.

On August 23, 2023, Dobronski received another call asking for Lester. *Id*. at PageID.150–51. The female caller identified herself as "Tony. . . with the Enrollment Center" and asked if Dobronski had "ever been at Camp Lejeune, to which [he] responded 'yes.'" *Id*. at PageID.151. Like what occurred during the call on August 16, Tony thereafter sent Dobronski an email addressed to Lester Clarke at the false email address Dobronski had provided, which attached "a contingency fee retainer agreement," this time on "TorHoerman and Saddle Road letterhead" and identified "TorHoerman and Saddle Road" as the law firms providing representation. *Id*. at PageID.145. The agreement was pre-filled with the false Lester Clarke information Dobronski had provided. *Id*. The email also included "an introductory letter on

behalf of Saddle Rock" signed by Defendant Young and "an introductory letter on behalf of TorHoerman" signed by Defendant Schneider. *Id*.

In addition, between August 16 and August 29, 2023, Dobronski received 13 calls (Calls # 3–4, 6, 8–11,13–18), all of which displayed CONSUMER ENROLL on the caller identification screen, but when Dobronski answered the calls, the caller hung up. *Id*. at PageID.146–48.

### C. Claims

Dobronski alleges the following claims against all Defendants:

1. Count I: TPCA regulation 47 CFR § 64.1200(a)(1)(iii) – Autodialer – calls #1–18
2. Count II: TPCA regulation 47 CFR § 64.1200(a)(6) – Hang up – calls # 4, 8, 14, 18
3. Count III: TPCA regulation 47 CFR § 64.1200(a)(7) – Abandoned –  calls # 3, 6, 8–11, 13-18
4. Count IV: TPCA regulation 47 CFR § 64.1200(d)(3) – Do Not Call – calls #1–18
5. Count V: TPCA regulation 47 CFR § 64.1200(d)(4) – Failure to Identify – calls #1–18
6. Count VI: TPCA regulation 47 CFR § 64.1601(e) – Spoofed Caller ID – calls #1–18

Dobronski alleges that these violations were knowing and willful.

### III. ANALYSIS

Defendants move to dismiss the complaint for three reasons: (1) improper venue under Civil Rule 12(b)(3); (2) failure to provide them with adequate notice of the claims against them and the grounds upon which they rest under Civil Rule

8(a)(2); and (3) failure to state a claim upon which relief may be granted under Civil Rule 12(b)(6).

## A. Venue[4]

This Court must dismiss "'a case laying venue in the wrong division or district,' unless [this Court] finds 'in the interest of justice' that the case should be transferred 'to [the district] in which it could have been brought,' rather than dismissed." *Stanifer v. Brannan*, 564 F.3d 455, 456 (6th Cir. 2009) (second alteration in original) (quoting 28 U.S.C. § 1406(a)). Venue for civil cases is governed by 28 U.S.C. § 1392, which provides, *inter alia*, that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1392(b).

Defendants contend that venue is not proper in this judicial district because Dobronski received the telephone calls at issue on a residential number with a Florida area code. ECF Nos. 28 at PageID.193; 42 at PageID.381. Defendants argue that the Court should focus its analysis on the dialed number and that any call that Dobronski may have received in Michigan from that number was because he had the

---

[4] In his response, Dobronski disputes that concurrence was sought before the Russo Defendants filed their motion. ECF No. 32 at PageID.225; E.D. Mich. L.R. 7.1. He states that had concurrence been properly sought, he would have consented to transferring this case to the Middle District of Florida. *Id*. Even assuming that to be true, given the Court's analysis of the venue issue, the court deems the transgression harmless in this particular instance only.

calls forwarded there. *Id.*, citing *Thompson v. Branch Banking & Trust Co.*, No. 19-cv-60108, 2020 WL 3316092 at *1 (S.D. Fla. May 1, 2020). However, Dobronski's complaint specifically alleges that when he received the Subject Calls, he was at his residence in Washtenaw County, Michigan. ECF No. 25 at PageID.131. This occurred not because Dobronski forwarded calls from Florida to Michigan, but because he utilizes a Voice Over Internet Protocol (VoIP) so calls to his number appear at his residences both in Florida and Michigan. ECF No. 32 at PageID.229. Accordingly, this situation is distinguishable from *Thompson*.

Given that Dobronski received the Subject Calls while in Washtenaw County, Michigan, this district is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1392(b). Accordingly, venue is proper.

### B. Notice of Claims

Defendants argue that Dobronski's complaint "fails to delineate the necessary allegations between each of the named Defendants and, instead, takes the 'shotgun' approach, which is not sufficient to state a claim." ECF No. 42 at PageID.379. Defendants take issue with the fact that "none of the Amended Complaint's [] causes of action are clearly directed at any specific Defendant." ECF No. 28 at PageID.195.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A plaintiff also must "provide the defendants adequate notice of the claims

against them and the grounds upon which each claim rests." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

In this case, although Dobronski's complaint sets forth specific factual allegations that delineate the specific roles and relationships of the Defendants, *see* ECF No. 25 at PageID.137–143, 154–172, it fails to "connect specific facts or events with the various causes of action [he] asserted." *Lee*, 951 F.3d at 392 (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)).

Under the TCPA, a defendant who "initiates" a call is "directly" liable for TCPA violations that occurred during the call. *In re DISH Network*, 28 FCC Rcd. 6574, 6582–84 (2013). Alternatively, a defendant who did not initiate a call "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer. *Id*. at 6582. Applicable agency principles embrace "not only formal agency, but also principles of apparent authority and ratification" *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (quoting *In re DISH Network*, 28 FCC Rcd. at 6584, ¶ 28). As explained by the Sixth Circuit in *Lucas*,

> In determining that vicarious liability *could* be applied to claims for relief under the TCPA, the FCC noted that "[t]he classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's

> control," and extends to situations where a "third party has
> apparent (if not actual) authority" to act as a principal's agent.
> Dish Network, 28 FCC Rcd. at 6586, ¶ 34. Finally, ratification occurs
> when an agent acts for the principal's benefit and the principal
> does not repudiate the agent's actions. Sphere Drake Ins. v. Am. Gen.
> Life Ins., 376 F.3d 664, 677 (7th Cir. 2004).

*Lucas*, 2019 WL 3021233, at *5.

Here, Dobronski concedes that he does not know the identity of the telemarketers who initiated the Subject Calls. ECF No. 25 at PageID.142. So for each claim, he simply alleges that "Defendants or Defendants' agent" initiated calls that violated a particular section of the TCPA. *Id.* at PageID.156–60. However, these allegations could mean that all 13 Defendants collectively initiated the calls. It could also mean that all 13 are jointly liable under a theory of vicarious liability under the TCPA because they mutually authorized third parties to initiate the calls, or they ratified a benefit derived from the third parties' actions. Other statements in the complaint, such as "Defendants engaged in a concert of action" or that the Defendants acted "in partnership" with other Defendants, imply that Dobronski may be asserting concerted-action or partnership liability. These are just a few examples of how one could interpret the Dobronski's claims in light of the agency law principals available. Given that the complaint fails to connect specific facts or specific defendants to any of these theories of liability, it fails to give Defendants adequate notice of the grounds upon which Dobronski's claims rest.

Although there are cases where a complaint that asserts identical claims against multiple defendants can adequately give notice to the defendants as to the claims against them, *see e.g., Johnson v. The Berkely Group*, 2013 WL 12130296 at *1, *5 (2013), here, given that the third-party telemarketers are unknown, there are 13 defendants whose involvement vastly differs, several of the defendants are simply "fictitious business names," and not every call necessarily involves every defendant, this Court finds that the complaint fails to connect specific facts to any of the numerous theories of liability it raises.

In addition, Dobronski's contention that all Defendants could be held jointly liable for all 18 Subject Calls based on a civil conspiracy theory is unpersuasive when the complaint itself states that "*numerous* entities, *including* Defendants, are engaging in mass telemarketing and robocalling campaigns to broad swathes of the United States" relating to mass tort matters. ECF No.25 at PageID.137 (emphasis added). Thus, many of the Subject Calls, especially those that were terminated immediately upon being answered so no information was exchanged, could be the result of efforts by entities apart from these Defendants and outside of the alleged conspiracy.

Because the complaint improperly groups Defendants together, the remaining claims will be dismissed for failing to provide Defendants with proper notice of the basis of the individual claims against each one.

### C.  Failure to State a Claim

In light of this Court's decision on the notice issue, it need not address Defendants' arguments that the complaint fails to state a claim.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendants Anthony J. Russo, Jr. P.A. d/b/a The Russo Firm, Anthony John Russo, Jr. d/b/a RP Law LLC, Matthew A. Dolman, P.A. d/b/a Dolman Law Group, TorHoerman Law LLC, Saddle Rock Legal Group LLC, Thomas Lowe Young, and Tyler Joseph Schneider's Motion to Dismiss, ECF No. 28, is **GRANTED**;

2. Defendants Spring Investment, Inc. d/b/a Media Merchants Group, Jeffrey Steven Fishman and Rochelle Marissa Adler's Motion to Dismiss, ECF No. 42, is **GRANTED**;

3. Counts I through IV are **DISMISSED WITHOUT PREJUDICE**.

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 9/30/2024